J.A.W., Appellant,

v.

D.M.E., Appellee.

No. 90–152.

District of Columbia Court of Appeals.

Argued Feb. 7, 1991.
Decided May 21, 1991.
As Amended June 17 and July 12, 1991.

---

E. Marie Wilson–Lindsay, Washington, D.C., for appellant.

Ronald L. Webne, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

TERRY, Associate Judge:

This is a companion case to *W.M. v. D.S.C.*, 591 A.2d 837, decided this day. Although the two cases involve different parties and different facts and were tried before different judges, the principal legal issue is the same in both: whether the trial court, in a paternity action, can or should award child support retroactively to the child's birth upon a finding (or, as in this case, an admission) of paternity. We hold in both cases that the court has the power to do so, that such an award should be the rule rather than the exception, and that the burden of persuasion is on the party opposing such an award—usually the father, whose paternity is proven or admitted in the course of the litigation—to demonstrate to the court why an award of child support should not be retroactive to the birth of the child.

Appellant filed a petition in the trial court seeking the establishment of paternity, an award of child support, reimbursement for one-half of the medical costs associated with the birth of her child, and recovery of attorney's fees, costs, and expenses connected with this litigation. On this appeal she contends that the trial judge (1) erred in failing to enter a permanent custody order in her favor, (2) erred in failing to consider the newly enacted child support guidelines when determining the amount of child support to be awarded, (3) abused his discretion in denying her request for retroactive child support; and (4) improperly denied her request for attorney's fees and costs. We reject the second and fourth contentions, and as to the first we find only a technical error which can be easily corrected. On the issue of retroactive child support, however, we reverse and remand for further proceedings.

## I

During the mid–1980's, the parties had an ongoing intimate relationship for approximately two and a half years. As a result of this relationship, appellant gave birth to a son on August 30, 1988, and ten days later she filed this paternity and support petition in the Superior Court. Following a blood test which established a 99.99 percent likelihood that appellee was the father of appellant's child, appellee admitted paternity.

Appellant sought child support in the amount of $1,200 per month. The evidence established that appellant is an attorney with an annual gross income of $41,000, and that appellee is a social worker with an annual gross income of approximately $43,-000. After hearing all the testimony, the trial judge awarded appellant $520 per month in child support, but refused to make the support payments retroactive. The judge also denied appellant's request for attorney's fees and costs. The judge's final order did not award permanent custody to either party and, in fact, made no mention of custody at all.

## II

Appellant contends that the trial judge erred by awarding only $520 per month in child support. She asserts that the needs of her child and the statutory child support guidelines mandate a larger amount, offering documentation of expenses she incurred in caring for her child which averaged $2,240 per month. It was this sum on which appellant's request for $1,200 per month was based. The trial judge reviewed the list of expenditures and found many of them to be unreasonable.[1] He then noted that this court had recently invalidated the previous version of child support guidelines and proceeded to determine a reasonable amount. After making thirty-one findings of fact, the judge concluded that $1,041.50 per month would be adequate to provide for the child's needs. Finding that both parents were equally able to share this expense, he ordered appellee to make monthly payments of $520. His order was signed on December 22, 1989.

As the trial judge correctly observed, this court had recently invalidated the previously promulgated child support guidelines in *Fitzgerald v. Fitzgerald,* 566 A.2d 719 (D.C.1989). In response to the invalidation of those guidelines, the Council of the District of Columbia passed an emergency statute establishing new guidelines, D.C. Act 8–127, which was signed into law by the Mayor on December 21, 1989.[2] Since these emergency guidelines became law one day before the judge signed his final order, they are applicable to this case, even though they were in effect for less than three months, from December 21, 1989, to March 15, 1990. The judge's conclusion that the guidelines did not apply, understandable in the circumstances, was nonetheless erroneous. We conclude, however, that his error was harmless because the amount of support which the judge actually

---

1. Among the expenses the court found unreasonable were $900 for the child's first birthday party, which was attended by forty adults and twenty-five children, the cost of a trip to Disneyland in California when the child was nine months old, and half of the expenses and payments related to appellant's automobile. (The other half of the costs connected with that automobile had previously been deducted from appellant's income tax as a business expense.)

2. This statute, the "Child Support Guideline Amendment Emergency Act of 1989," enacted into law the Revised Child Support Guideline which earlier had been promulgated by the Superior Court but had been invalidated by this court in *Fitzgerald v. Fitzgerald, supra.* D.C. Act 8–127, 37 D.C.Reg. 3 (1990). While the emer-

gency act was in effect, the Council passed a temporary act, which was signed by the Mayor on January 11, 1990, D.C. Act 8–141, D.C.Reg. 758 (1990), and became effective on March 15, 1990, superseding the emergency act. D.C. Law 8–90, 37 D.C.Reg. 2073 (1990). The text of the temporary act is published in the annotations following D.C.Code § 16–916 in the 1990 Supplement to the District of Columbia Code. A permanent statute, adding new sections 16–916.1 and 16–916.2 to the Code, was enacted by the Council as D.C. Act 8–208 on May 15, 1990, was signed by the Mayor on May 30, 1990, 37 D.C.Reg. 3720, became effective as D.C. Law 8–150 on July 25, 1990, 37 D.C.Reg. 5138, and will presumably be published in the 1991 Supplement to the Code.

awarded was consistent with the guidelines.

The emergency guidelines prescribe "an equitable approach to child support in which both parents share legal responsibility for the support of the child." D.C.Code § 16–916.1(b)(1), 37 D.C.Reg. 3.[3] Included in the guidelines is a sliding-scale formula for determining support which considers the age of the child, the number of children to be supported, any special needs of the child, and the income of both the custodial and the non-custodial parent. Application of the guidelines is presumptive. The guidelines list certain factors which "may be considered to overcome the presumption," but if the court in a particular case decides that the guidelines should not apply, it must explain the reasons for its decision in writing. D.C.Code § 16–916.1(*l*), 37 D.C.Reg. 8–9.

Applying the guidelines to this case, we find that the amount which should have been awarded under the guidelines and the amount actually awarded by the trial judge are substantially the same. Under the guidelines, a non-custodial parent with an income of $25,001 to $50,000 supporting one child from zero to six years of age would be expected initially to contribute 22 percent of his or her gross income for the care of the child. *See* Chart 1 at D.C.Code § 16–916.1(q), 37 D.C.Reg. 12. Twenty-two percent of appellee's gross income of $43,-000 is $9,460.

Section 16–916.1(j) of the guidelines, 37 D.C.Reg. 7–8, provides that this amount "shall be reduced by a percentage that corresponds to the custodial parent's share of total parental income" if the custodial parent earns more than a prescribed "threshold amount" per year. When there is only one child to be supported, the threshold amount is $16,500. Under the statutory formula, the amount of support owed by the non-custodial parent is calculated by first subtracting the threshold amount ($16,500) and the cost of day care ($3,600 in this case) from the gross income of the custodial parent ($41,100). This comes to $21,000.[4] That amount is then divided by the gross income of the non-custodial parent ($43,000) plus the custodial parent's gross income ($41,100) minus the threshold amount ($16,500) and day care costs ($3,600). This comes to $64,000.[5] This calculation, $21,000 ÷ $64,000, yields a result of .328, which is converted into a percentage, 32.8 percent.

Thus, under the guidelines, appellee's payment "shall be reduced" by 32.8 percent. His initial payment under the guidelines (22 percent of his gross income) would be $9,460. Reducing that amount by 32.8 percent ($3,102.88) would leave $6,357.12 payable over twelve months, or $529.76 per month. The guidelines permit the trial court to add or subtract up to three percent without putting the reasons in writing. D.C.Code § 16–916.1(m), 37 D.C.Reg. 9. Since the difference between the amount prescribed by the guidelines ($529.76) and the amount actually awarded ($520) is less than three percent, the trial judge's calculation of the child's needs in this case comports with the presumptive amount under the guidelines. We therefore affirm the award of $520 per month in child support.

### III

Appellant next claims that the trial judge abused his discretion by denying her request to make the child support award retroactive to the birth of the child. Although there is no express statutory authority for awarding retroactive support for children born out of wedlock, this court has previously held that such children may

---

**3.** For all practical purposes, the emergency guidelines and the temporary guidelines were identical. Both enactments temporarily added two new sections to the Code, 16–916.1 and 16–916.2, as does the permanent statute which took effect in July 1990. See note 2, *supra.* Our citations to the emergency guidelines in this opinion, therefore, will include both a Code reference and a reference to the page of the District of Columbia Register on which the pertinent language appears, since the emergency guidelines were never published anywhere except in the Register.

**4.** *I.e.,* $41,100 − $16,500 − $3,600 = $21,000.

**5.** *I.e.,* $43,000 + $41,100 − $16,500 − $3,600 = $64,000.

be awarded support retroactive at least to the date of service of the petition for support. *Cyrus v. Mondesir*, 515 A.2d 736 (D.C.1986). Until today we have not had occasion to go further back than that, but neither *Cyrus* nor any other case precludes us from doing so.

The *Cyrus* court gave three reasons for making a support award at least partially retroactive. First, the possibility of an order to pay retroactive support acts as a disincentive for fathers "to avoid their child support obligations for some period of time by delaying the process of adjudicating paternity." *Id.* at 739 (footnote omitted). Second, "the prospect of a retroactive award may allow a mother to use more of her own resources to care for her child during paternity proceedings, with the expectation of replenishing the resources available for her child by way of a retroactive award." *Id.* Finally, the availability of a retroactive support award enables the District of Columbia, in some cases, to seek reimbursement for child support expenses it has incurred during the pendency of the proceedings. *Id.* We see no reason why these three reasons would not apply with equal force to the type of order requested here.

Before the enactment of the guidelines, trial courts had broad discretion under D.C. Code § 16–916 (1989) both to determine the amount of child support and to make any support order retroactive.[6] The guidelines establish statutory limits within which the court must exercise its discretion, but they do not alter the basic principle, expressed both in section 16–916(a) and (c) of the Code and in several cases, that "[i]n the District of Columbia parents have an unqualified obligation to contribute to the support of their children." *Burnette v. Void*, 509 A.2d 606, 608 (D.C.1986) (citations omitted). This court has also held that "[c]hild support is a right which belongs to the child." *Id.* (citations omitted). Thus a finding of paternity necessarily includes a finding that the child is entitled to support from the now-identified father as well as the mother.

From the fundamental premise that the law requires every parent to support his or her child, the most logical conclusion to be drawn is that this parental duty begins upon the birth of the child—or, stated another way, that the child's right to parental support begins at birth. We so hold in this case and in *W.M. v. D.S.C., supra.* The possibility that the child's paternity may have to be ascertained in a court proceeding cannot excuse the father, once his identity is established, from fulfilling his parental duty of support. If the father has some other demonstrable reason for being excused from that duty, then the burden must fall on the father to persuade the court to excuse him; if the father does not carry that burden of persuasion, the court should generally order that child support payments be made retroactive to the child's birth. To hold otherwise would reward the father of a child born out of wedlock for any unreasonable refusal to acknowledge his paternity or for any delays he might cause in the adjudication of paternity, and would treat fathers of such children differently from fathers of children born in wedlock, whose duty of support from birth is beyond dispute. *Cyrus v. Mondesir, supra,* teaches that neither of these results can be tolerated. 515 A.2d at 739.

The trial judge's entire ruling in this case on the issue of retroactive child support was as follows:

As for retroactive support from September 1988, the Court finds that Ms. W. could have made greater attempts to communicate with Mr. E., and Mr. E. could have continued some payment to Ms. W. even though he did not know how much was necessary. Nevertheless, the Court has carefully weighed this situation and will not hold Mr. E. responsible for any retroactive support.

---

**6.** This court has permitted child support to be increased retroactively, *Trezevant v. Trezevant,* 403 A.2d 1134 (D.C.1979), and to be decreased retroactively, *Rhodes v. Gilpin,* 264 A.2d 497 (D.C.1970). We have also allowed past due payments to be awarded even when there was no specific request in the complaint for such an award. *McGehee v. Maxfield,* 256 A.2d 576 (D.C.1969).

We cannot tell from this portion of the judge's final order how he exercised his discretion, and thus we are unable to undertake any meaningful review of that exercise of discretion. *See Moore v. Moore,* 391 A.2d 762, 770 (D.C.1978) (rules "require detailed, written findings of fact and separate conclusions of law upon all matters" (citations omitted)). Having held today that the child's right of support begins at birth, we remand this case to the trial judge for reconsideration of appellant's request for retroactive support in light of that holding.

To what we have said thus far about retroactivity and the father's burden of persuasion, we add one cautionary word. Whenever a court concludes that a parent's support payments should be made retroactive to the child's birth, the amount of those payments should be limited to a fair share of only those expenses that were actually made by the other parent, and only those expenses that the court deems to have been reasonable. What that means in this particular case is that the father shall not be required to reimburse the mother for any of those expenses which the court has previously found to have been unreasonable, such as the trip to Disneyland and the birthday party with sixty-five guests. See note 1, *supra.*[7]

## IV

▇ Appellant contends that the trial court abused its discretion in denying her request for attorney's fees and costs. We do not agree.

This court in *Martin v. Tate,* 492 A.2d 270 (D.C.1985), identified five types of domestic relations cases in which attorney's fees are available by statute: (1) actions for divorce or annulment of a marriage, (2) actions by a former spouse to recover alimony or child support arrearages, (3) actions for spousal or child support against a husband or wife, or against a former spouse for child support, (4) actions for alimony against a former spouse who obtained a foreign *ex parte* divorce, and (5) actions against "any father or mother" for the support of minor children. *Id.* at 273 (citations omitted).

Although no statute specifically provides for the recovery of attorney's fees in suits to establish paternity, we have previously held that the "primary purpose" of such proceedings is "to provide financial support for the child." *E.R.B. v. J.H.F.,* 496 A.2d 607, 611 (D.C.1985) (citations omitted). That purpose is apparent in this very case: appellant's complaint seeks not only the establishment of paternity but also an award of child support. In these circumstances we hold that in paternity suits which include claims for child support, D.C. Code § 16–916(c) authorizes the trial court to award attorney's fees.[8] Such cases fall within the fifth category listed in *Martin v. Tate, supra.*

Having determined that the trial judge had statutory authority to award attorney's fees, we next consider whether the judge properly exercised his discretion in denying appellant's request for $12,075 in attorney's fees and more than $3,000 in costs and expenses. Appellant contended below that these obligations were incurred solely because of appellee's delay in admitting paternity. The trial judge, however, found "that the delays in this case can be attributed equally to both parties" and that any delays associated with the court-ordered blood test were "a matter of procedure rather than an attempt by Mr. E. to delay this case." The judge therefore denied appellant's request and ordered that each par-

---

**7.** Judges should, of course, be cautious about second-guessing parents about what is reasonable for their children's well-being. In this case, however, we cannot find fault with the judge's decision that certain expenses made by the mother were unreasonable.

**8.** D.C.Code § 16–916(c) (1989) provides:
When a father or mother fails to maintain his or her minor child, the Court may decree that the father or mother pay reasonable sums periodically for the support and maintenance of the child, that the parent obtain medical insurance for the child whenever that insurance is available at a reasonable cost, and that the father or mother pay Court costs, *including counsel fees,* to enable plaintiff to conduct the [case]. [Emphasis added.]

ty be responsible for his or her own attorney's fees.

A trial court decision on a request for attorney's fees is within its broad discretion, and we will reverse any such decision only on "an extremely strong showing" of an abuse of that discretion. *Ritz v. Ritz,* 197 A.2d 155, 156–157 (D.C.1964). That standard is not met here. There is ample support in the record for the trial judge's finding that the delays were attributable to both parties. We note in addition that appellant, an attorney herself, has been represented in this case by her sister, who is also her law partner. During her deposition appellant stated that her sister was not charging her for that representation. At trial appellant sought more than $12,000 in fees, but she admitted that she had not been billed by her sister for any professional services. In addition, as a partner in the law firm, appellant would share in any award of fees. Given this record, we find no abuse of discretion.

## V

■ Finally, because custody was not and still is not a contested issue, we direct the court on remand to enter an order awarding custody of the child to appellant. We assume that the omission of any language regarding custody from the trial court's order was merely an oversight. *See Cobbe v. Cobbe,* 163 A.2d 333, 336 (D.C.1960) (decree which is not final as to child custody is not final as to amount of support or the duty to pay it because "[t]he duty of support follows custody").[9] This is a minor matter which can be easily corrected by the trial court on remand.

## VI

The case is remanded to the trial court for further proceedings with respect to appellant's request for retroactive child support and for the entry of an order awarding custody of the child to appellant. In all

9. We note also that the order grants certain visitation rights to appellee, which necessarily

other respects the judgment of the trial court is affirmed.

*Affirmed in part, remanded in part.*

implies that he does not have custody.