637 A.2d 1144 (1994)
In re X.B.
S.B., Appellant.
No. 90-FS-1027.
District of Columbia Court of Appeals.
Argued May 29, 1991.
Decided March 3, 1994.
*1145 Hubert H. Margolies, appointed by this court, for appellant.
Al. J. Gonzalez, for appellee.
Before STEADMAN, SCHWELB, and WAGNER, Associate Judges.
WAGNER, Associate Judge:
Appellant, S.B., is the natural father of X.B., a minor child fourteen years old at the time, who was removed from S.B.'s care after he entered a stipulation of neglect pursuant to D.C.Code § 16-2301(9)(B) (1989). Appellant challenges the trial court's disposition order imposing upon him a weekly child support obligation because he was not given adequate notice or a hearing as required by D.C.Code § 16-2325 (1989). The trial court determined that the delivery of a copy of the predisposition report in the neglect case by the assigned social worker to the folder for appellant's attorney in the CCAN[1] office constituted adequate notice that the court would include in its disposition order an award of child support. We hold that such constructive notice was inadequate to meet the requirements of law and reverse and remand for further proceedings consistent with this opinion.

I.
On May 1, 1990 the District of Columbia filed a neglect petition alleging that on or about April 27, 1990, S.B. slapped X.B., his daughter, many times in the face and beat her repeatedly on the buttocks with an extension cord as a result of which X.B. sustained injuries to her mouth, arm, and buttocks. The petition alleged further that S.B. had beaten X.B. with an extension cord on prior occasions. A police investigator filed a report stating that he interviewed S.B. in his home and that he admitted spanking X.B. because, according to S.B. she was having an affair with a suspected drug dealer, and she persisted in doing so after he requested her to cease the relationship. Pending a hearing on the allegations, X.B. was released to the temporary custody of her sister, R.M.
*1146 At a status hearing on June 6, 1990, it was learned that the attorney originally appointed to represent S.B. was ill and that he might not be available for weeks or even months. The jacket entry for June 6, 1990 reflects that Hubert Margolies was appointed as counsel to represent S.B. at that time. However, the order relieving prior counsel and appointing Mr. Margolies in his stead was not entered until June 13, 1990, and according to the record, Mr. Margolies was notified officially of his appointment on that date. S.B., who speaks no English,[2] indicated through an interpreter that he wished to proceed with the case on June 14, 1990, the next scheduled status date, even though new counsel had just been appointed. At the status hearing, S.B. entered a stipulation in which he essentially admitted the allegations in the neglect petition, and he consented to X.B. remaining in the custody of her sister, R.M., with visitation rights reserved to him, provided X.B. consented and R.M. was present. He also agreed to attend parenting and counseling classes.[3] A disposition hearing was set for July 31, 1990.[4]
Later during the week of July 23, 1990, the assigned court social services worker, Elsa Mantilla, called Mr. Margolies and stated that she had prepared a predisposition court report which she would leave in his folder in the CCAN office in Superior Court. However, appellant's counsel had no business at Superior Court until Tuesday, July 31st, the morning of the disposition hearing. Appellant's counsel represented to the court that the only "notice" that child support would be considered and imposed at the disposition hearing was the recommendation made by the social worker in the predisposition report which he saw for the first time on the morning of the disposition hearing.[5] Therefore, he had only a brief time to confer with S.B., who required an interpreter, before the hearing, and he objected to the entry of a support order. Nevertheless, as a part of the disposition order, which placed X.B. in her sister's custody with the visitation provision set forth in the stipulation, the court ordered S.B. to pay $58 per week in child support to R.M., the custodian, through the Registry of the Court. The trial court made no factual findings to support its determination of the support amount. The court also scheduled an intermediate review for November 2, 1990.[6]
*1147 On August 6, 1990 S.B. filed a Motion to Vacate the support order on the grounds that it was: (1) entered in contravention of D.C.Code § 16-2325; (2) denied S.B. the procedural safeguards of proper notice and an opportunity to be heard; and (3) entered without regard to S.B.'s financial status and ability to pay.[7] The court denied the motion on August 14, 1990 "without prejudice to filing a motion for Reconsideration of Support Order within ten days of entry of this Order setting forth specific factual reasons why the support order of July 31, 1990 should be reduced or vacated." The following day, without seeking reconsideration, S.B. noted this appeal from the dispositional order and from the order denying the motion to vacate.

II.
Appellant argues that the trial court erred in ordering him to pay child support as a part of the disposition order in a neglect case without providing him with due notice and a hearing as required by D.C.Code § 16-2325. Such notice, according to appellant, must be separate and distinct from the notice of the dispositional hearing and precede the support hearing. He further contends that notification of his attorney by the social worker, less than five business days before the dispositional hearing, of the availability of the predisposition report, in which the social worker made a general recommendation that appellant pay child support, was insufficient to meet the due notice requirement of the support statute. While conceding that D.C.Code § 16-2325 requires due notice to the parent before the court imposes upon him or her a child support obligation, appellee argues that, read in context with other pertinent statutory provisions, particularly D.C.Code § 16-2319(b), notification of appellant's counsel of the availability of the predisposition report was sufficient to meet the requirements of due notice set forth in D.C.Code § 16-2325. We consider these arguments in light of the relevant statutes and case law.[8]
Following an adjudication by the court that a child has been neglected, the Superior Court has authority to enter a dispositional order affecting the child's care and custody which is in the child's best interest. See D.C.Code § 16-2320 (1989). The focus of the dispositional hearing, as gleaned from the statutes governing the proceeding, is primarily upon the appropriate placement or custodial arrangements for the child, plans for the provision of social, medical, and other services directed toward alleviating conditions harmful to the child, and plans for "maximiz[ing] the parent-child relationship consistent with the welfare of the child." See D.C.Code §§ 16-2319, -2320.[9] To assist the *1148 court in reaching a disposition consistent with the child's best interest, the court is required to direct the Director of Social Services or other designated agency to prepare a predisposition study and report providing specified information related to these primary areas of focus. D.C.Code § 16-2319(c).[10] While the information required by statute to be covered in the predisposition study and report is not exhaustive, there is no mention in the list of any requirement for the inclusion of information pertaining to child support. See id.; see also D.C.Code § 16-2320. Thus, there is no reason to expect that notice of the filing of the social worker's report alone would be sufficient to alert counsel and his client that a hearing would be held to determine child support at the dispositional hearing.
Respondent points out correctly that D.C.Code § 16-2325 authorizes the court to consider the issue of child support in neglect cases during the dispositional hearing or thereafter. Therefore, respondent argues, the notice required of the filing of the predisposition report set forth in D.C.Code § 16-2319(b) should be read to constitute "due notice" of the support hearing as mandated by D.C.Code § 16-2325. D.C.Code § 16-2325 provides in pertinent part the following:
Whenever legal custody of a child is vested in . . . [an] individual other than the child's parent, after due notice to the parent or other persons legally obligated to care for and support the child and after hearing, the [court] may, at the dispositional hearing or thereafter, order and decree that the parent . . . shall pay ... a reasonable sum that will cover in whole or in part the support and treatment of the child after the decree is entered.
(Emphasis added). The meaning of due notice and the type of hearing required is not explicated further in the neglect statute. However, the time for making available to counsel the predisposition study and report is governed by D.C.Code § 16-2319(b) which provides that the report
shall be made available to all counsel in the proceedings at least five (5) days prior to the date of [trial]: Provided, however, that the investigation and plan shall not be furnished to or considered by the court prior to the completion of the fact-finding hearing.
It is the foregoing provision which respondent contends should be read to meet the due notice requirement of D.C.Code § 2325. We reject this argument for a number of reasons.
The purpose of any notice requirement is "to provide forewarning of an event." Gray v. American Express Co., 240 U.S.App.D.C. 10, 17, 743 F.2d 10, 17 (1984). Generally, the purpose of the notice is to provide the person who must respond with an adequate opportunity to prepare and present his or her defense. See Watergate Improvement Assocs. v. Public Serv. Comm'n, 326 A.2d 778, 786 (D.C.1974). In a judicial proceeding, notice of the claim and the requirement to defend is conveyed through court process, the object of which "is to notify [a] defendant that he [or she] is being sued, to give the court jurisdiction over his [or her] person, and to require him [or her] to appear and answer [the claims asserted] at a stated time and place." Craig v. Heil, 47 A.2d 871, 872 (D.C.1946). Appellant does not challenge the court's jurisdiction, but rather contends that he was not given due notice sufficient to apprise him of the support claim and to afford him an opportunity to prepare and defend against that particular claim.[11] Appellant's argument is well taken.
*1149 The recommendation of the assigned social worker that appellant be required to pay child support, which was left at the court-house for the attorney to pick up less than five business days before the child support hearing, is inadequate to meet the due notice requirement of D.C.Code § 2325. First, the notice requirements for the filing of the predispositional report are separate and distinct from the "due notice" requirement of the statute authorizing the court to impose a child support obligation. The nature of the issues involved under D.C.Code § 16-2325 and those which are required by statute to form a part of the dispositional report are different, and the legislature included separate notice provisions for each. See D.C.Code § 16-2325 and D.C.Code § 16-2319. While the five-day prefiling requirement is deemed sufficient to apprise the parent of recommendations associated with issues already raised in the neglect petition, developed during the factfinding hearing, and included in the court's written findings of fact and adjudication of neglect, see Super.Ct.Negl.R. 16(d), it is not sufficient to inform the affected party of new issues raised for the first time thereafter, which require a different factual and legal focus. More particularly, the filing of the predispositional report standing alone is not due notice under D.C.Code § 16-2325 sufficient to place a parent on notice that he or she will be required to appear and defend at the dispositional hearing a claim for support under the Child Support Guideline.[12]See D.C.Code § 16-916.1.
The separate notice provisions set forth in D.C.Code §§ 16-2325, -2319(b) and their distinct subject matter suggest that notice under the former was not intended to cover the latter. Additionally, D.C.Code § 2319(b) requires only that the predispositional study be made available to all counsel, while D.C.Code § 2325 states expressly that due notice must be given to the parent, i.e., the affected party. The legislative history of D.C.Code § 2319(b) supports the conclusion that its focus is upon making available to the court information which will "better assist the court in deciding what disposition best serves the child's needs, will encourage and expedite definitive planning for reuniting families and will serve to better inform parents of what is expected of them." See REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA COMMITTEE ON THE JUDICIARY ON TITLE IV OF BILL 2-48, THE PREVENTION OF CHILD ABUSE AND NEGLECT ACT OF 1977, at 19 (Mar. 29, 1977), D.C.Law 2-22. The goal of a disposition made upon careful planning on the matters involved was that it would foster an "increased and expedited reunification of families." See id. at 20. On the other hand, D.C.Code § 2325 deals with child support and the related financial responsibilities of the parent. See id. at 22-23. The legislature apparently deemed due notice to the parent, the affected party, and a hearing prior to imposition of an obligation thereunder to be essential and expressly so provided in the statute. Thus, we do not read the notice provision governing the filing of a predisposition report to cover the notice required for initiating a support hearing.
Moreover, notice to counsel of the availability of the predispositional report, less than five business days before the hearing, is inadequate to charge a party with notice that the child support question would be raised at the hearing because it does not provide a parent with adequate time to prepare and defend a claim for support under the Child *1150 Support Guideline, D.C.Code § 916.1. The determination of child support under the Guideline "is often difficult, potentially involving fairly sophisticated judgments and generating controversy among the affected parties." Brown v. United States, 579 A.2d 1158, 1162 (D.C.1990). Although parents have an unqualified obligation to contribute to the support of their minor children,[13] and the calculation of support under the Guideline employs some objective standards, departures from the Guideline are authorized if its application would be unjust or inappropriate under the circumstances shown. Guyton v. Guyton, 602 A.2d 1143, 1145 (D.C.1992). As appellant points out in his brief, counsel in the neglect proceeding may not be sufficiently knowledgeable of the issues involved in this somewhat complicated process to prepare and represent a client upon only five days notice. That was particularly true in this case where the client spoke no English and had to be interviewed through an interpreter. Summary action without due notice to the parent deprives that party of an opportunity for timely consultation with counsel and for preparation of a defense.
The procedures for hearing and determination of child support set out in D.C.Code § 16-916.1 and D.C.Code § 30-506 (1993) should be followed when the court seeks to impose a support obligation relying upon these statutory provisions. Under D.C.Code § 16-916.1(a), "[i]n any case brought under subsection [paragraph] ... (3) ... of section 11-1101 that involves the establishment or enforcement of child support, ... if the judicial officer finds that there is an existing duty of child support, the judicial officer shall conduct a hearing on child support, make a finding, and enter a judgment in accordance with the child support guideline ("guideline") established in this section." Although there are no specific notice requirements in this section, there are other sections of the Code which bear upon utilization of the Child Support Guideline for the type of notice required, i.e., D.C.Code §§ 30-501, -531. These sections were developed to "maximize the potential for children to receive timely, regular, and adequate support from their parents, safeguard the basic rights of all parties, and utilize the resources of the District in the most efficient manner." D.C.Code § 30-502(3). Nevertheless, provisions for detailed notice, crafted to afford the responsible party a fair opportunity to prepare and defend, have not been dispensed with. See D.C.Code § 30-506.[14] Particularly instructive is D.C.Code § 30-506, which contains the information which must be included in the notice to the responsible party. That list includes, inter alia, the date, time and place of the hearing, an explanation of the consequences of failure to attend, a demand to bring records of earnings over the past two years, and wage and tax statements. D.C.Code § 30-506(c), (d). This type of information is of such a nature as to meet the purposes for notice to the party, i.e., advance warning of the claim and an opportunity to prepare to meet it. The social worker's predisposition report in this case did not provide any of this information, and no other notice was given prior to the imposition of the support award. The court had no authority to dispense with even minimal notice requirements. Absent due notice, the court was required to vacate the support order.
Respondent argues that even if the initial notice was inadequate, the trial court cured the defect by denying the motion to vacate without prejudice to appellant filing a motion for reconsideration "setting forth specific factual reasons why the support order. . . should be reduced or vacated." This provision of the court's order, respondent contends, afforded appellant an opportunity to present any objections to the child support award, thereby eliminating any prejudice.
*1151 While there may be circumstances under which the requirements of procedural due process may be satisfied in spite of the absence of adequate notice,[15] we do not find them present in this case. Here, not only was the notice inadequate, but the court never afforded appellant the opportunity for the hearing mandated by statute at any time after it can be assumed reasonably that appellant had received due notice of the addition of the child support issue to the proceedings. See D.C.Code § 16-2325. Its order only invited appellant to file written objections in an effort to persuade the court that the order should be reduced or vacated. This particular statute does not condition the right to a hearing upon a particular showing by the responsible party. Whether the court would have allowed a hearing, in any event, is a matter of speculation.[16] We are persuaded that under all the circumstances, and given the general confusion, the interest of justice requires that the case be remanded and the order vacated.
Accordingly, we reverse and remand for further proceedings consistent with this opinion.[17]
Reversed and remanded.
NOTES
[1] CCAN is an acronym for Center for Child Abuse and Neglect.
[2] S.B. and his daughter X.B. immigrated to this country from Nicaragua in about January 1989.
[3] The file contains a letter from the child's mother, M.E.L., who lives in Nicaragua, urging the child's return to her in Nicaragua, objecting to her placement with R.M., and explaining her financial inability to appear. M.E.L.'s letter also discloses that the court appointed custodian, R.M., is not a child of M.E.L.
[4] See D.C.Code § 16-2319 (1989). This section of the Code provides, inter alia, for the Director of Social Services to prepare a predisposition study and report for submission to the court after completion of the factfinding hearing on the petition alleging neglect. D.C.Code § 16-2319(a). The Director of Social Services heads an office which provides social services for the Superior Court. See D.C.Code § 11-1722 (1989).
[5] The recommendation in the report appears in the following language:

The worker feels that Mr. [B] needs to provide for [X's] economic support. He has not been interested in visiting with his daughter or in providing for her support since removal from his custody.
* * * * * *
That Mr. [B] provide for [X's] support through the Child Support Unit of the Court.
[6] Reviews of dispositional orders in neglect cases are mandated by statute at certain minimal, specified intervals, depending on the age of the child and the child's custodial placement. See D.C.Code § 16-2323 (1989). Subjects of the review hearing, which are required to be covered in a report prepared by the department, agency, or institution responsible for services to the parent, child and/or other involved parties, include, inter alia, the following: (1) the extent of visitation by the parent; (2) the estimated time for the child's return home; (3) services offered or provided the child and parents; (4) evidence of amelioration of the cause of neglect and any new problems; (5) level of cooperation of the parent; and (6) "such other information as may be required by rules of the Superior Court of the District of Columbia." D.C.Code § 16-2323(b). The statute does not include specifically any provision for review of support orders, which are covered typically in other statutory provisions and proceedings involving child support and enforcement. See id.
[7] Appellant contends that he was earning only $258 per week when the order was entered requiring him to pay $58 per week. While the Guideline is presumptive, there are factors which may warrant adjustment or departure from it. See, e.g., D.C.Code § 16-916.1(l)(4), (5) (1993 Supp.).
[8] Appellant also argues that the trial court impermissibly assumed the role of advocate in the proceeding by initiating proceedings to determine child support under the Child Support Guideline. See In re Kraut, 580 A.2d 1305, 1311 (D.C.1990). We reject the argument summarily. The trial court has authority to determine child support after due notice and a hearing. See D.C.Code § 16-2325. We find no other basis in the record to support appellant's argument in this regard.
[9] D.C.Code § 16-2320(f) provides in part as follows:

In its dispositional order the [court] shall address the matters set forth in section 16-2319(c) by accepting, modifying, or rejecting the plan submitted pursuant thereto. Section 16-2319(c) provides that the predisposition study include, but not be limited to, the following information:
(A) the specific harms intervention is designed to alleviate; (B) the plans for alleviating these harms including specific services, the proposed providers of the services recommended and the actions the parent, guardian, or custodian should take to alleviate these harms; (C) the estimated time in which the goals of intervention may be achieved or in which it will be known that the goals may not be achieved; and (D) the criteria to be used to determine that intervention is no longer necessary; and,
(2) If the removal of the child from his parent, guardian, or custodian is recommended, the report shall also include:
(A) the recommended type of placement;
(B) the reasons why the child cannot be protected in his or her home; (C) the likely harm the child will suffer as a result of the separation from his or her parent, guardian, or custodian and recommended steps to be taken to minimize this harm; and (D) the plans for maintaining contact between the parent and child through visitation rights in order to maximize the parent-child relationship consistent with the well-being of the child.
[10] See supra note 9, for a listing of the information which must be included in the report.
[11] Petitions alleging neglect are required to be filed by the Corporation Counsel and must "set forth plainly and concisely the facts which give the [Superior Court] jurisdiction of the child under section 11-1101(13)[,]" which lodges in the Family Division of Superior Court jurisdiction over proceedings involving allegations of neglect of a minor child. D.C.Code § 16-2305(d) (1989). Parties must be notified of any amendments to the petition and, where necessary, must be given additional time to prepare. D.C.Code § 16-2305(e).
[12] Since this case came before the trial court, the neglect rules have been amended to add a provision to meet the requirement for adequate notice and a hearing before a determination of child support can be made in a neglect proceeding. The rule provides as follows:

When the issue of child support is raised by any party, the judicial officer may, in his or her discretion, include in the order the amount to be paid by the parent or other legally-obligated person to the agency or individual . . . with whom legal custody is vested, if such an obligation has been found. The determination of whether the parent or other person legally obligated to care for and support the child is financially able to provide all or part of the child's support shall be made after notice and hearing.
Super.Ct.Negl.R. 21(b)(2). The comment to the rule indicates that it is expected that the support aspects will be certified to a hearing commissioner for determination. Hearing Commissioners are authorized by statute and court rule to hear cases brought to establish child support. See D.C.Code § 11-1732(j)(4)(A) (1989); Super.Ct.Gen.Fam.R. D(b)(1).
[13] See Burnette v. Void, 509 A.2d 606, 608 (D.C. 1986).
[14] Section 30-507 of the Code makes explicit provisions for service of the notice in proceedings involving the enforcement of child support. However, in this case, appellant was already within the court's jurisdiction; therefore, this statutory provision for service of process is inapplicable. In order to add the support issue to the pending neglect proceeding, the applicable statute requires "due notice." See D.C.Code § 16-2325; see also current Super.Ct.Negl.R. 21(b)(2), supra note 12.
[15] At least in the context of an administrative proceeding, this court has held that the requirements of procedural due process were satisfied in spite of inadequate notice of the proceedings by a showing that the "complainant was given adequate opportunity to prepare and present its position and that no prejudice resulted from the originally deficient notice." Watergate Improvement Assocs., supra, 326 A.2d at 786 (citations omitted). In a subsequent opinion, although not necessary to the court's decision, we recognized the principle in connection with an irregularity in a child support proceeding. See McNeil v. Reynolds, 575 A.2d 270, 272 (D.C.1990). In McNeil, the appellant did not challenge the sufficiency of the notice, but whether the proper person initiated the action under D.C.Code § 30-509(b), which required a sworn statement as to the arrearage from the mother. 575 A.2d at 272. Finding that the action was covered by D.C.Code § 30-509(a), the court held that no wage statement was required and that the record belied appellant's contention that a clerk in the Family Division of the court had initiated the action sua sponte. McNeil, 575 A.2d at 272. After so holding, the court added that, assuming that irregularities in the notice had been found, since McNeil was represented by counsel, given a full hearing, and asserted the only available defenses, there was no prejudice. Id.
[16] Although S.B. had the right to appeal from the trial court's order without first filing a motion for reconsideration, it might well have been more practical for all concerned if his counsel had accepted the trial court's invitation to file such a motion. It is possible that the trial court might have been persuaded upon reconsideration to grant S.B. the required hearing and to consider the child support issue. Such a course might have obviated the need for an appeal on procedural grounds and the substantial investment of resources which accompanies it.
[17] Appellant has been on notice of the court's intent to impose a child support obligation upon him, while his child remains in the custody of her sister, pursuant to the Guideline since at least the date that the court denied the motion to vacate. Therefore, on the particular facts of this case, additional notice need not be given, provided that reasonable notice of any scheduled hearing date is given to appellant. Further, the trial court may impose any child support obligation effective from the date it determines that appellant first had due notice that support under the Guideline would be sought against him, subject to credits for any payments previously made.